J-S18033-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JO ANN HIMMELBERGER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BARRON HIMMELBERGER | : | |
| | : | |
| Appellant | : | No. 5 MDA 2026 |

Appeal from the Order Entered October 28, 2025
In the Court of Common Pleas of Berks County
Civil Division at No: 18-14690

BEFORE:  DUBOW, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:               **FILED: JULY 24, 2026**

In this divorce action, Barron Himmelberger (Husband) appeals from the order denying the petition for contempt he filed against Jo Ann Himmelberger (Wife) regarding outstanding student loans taken on behalf of the parties' daughter.[1]  After careful review, we affirm.

*CASE HISTORY*

Husband and Wife were married in 1996 and their daughter was born later that year.  On August 9, 2018, Wife filed a divorce complaint seeking dissolution of the marriage and equitable distribution.  Husband was served with the complaint, but "failed to file a responsive pleading and was unrepresented."  Trial Court Opinion (TCO), 1/21/26, at 4.  The case was assigned to a Divorce Master, who held a hearing on September 14, 2019.

_____

[1] The parties did not testify to the amount of the outstanding loans, and the amount is unclear from the documents they introduced into evidence.

Wife was the only witness, and introduced several exhibits "related to the issues presented." Report and Recommendation, 9/25/19, at 1.[2]

On September 25, 2019, the Divorce Master issued a 23-page report and recommendation finding there were "precious few assets to divide." *Id.* at 17. The Divorce Master addressed the parties' marital debt, including "total credit card debt of $70,486.00," and recommended that the debt be divided equally. *Id.* at 10. The Divorce Master concluded:

> Because Husband did not appear or testify it is difficult, if not impossible, to determine what his economic circumstances are. However, as noted, the incomes of the parties are relatively equal and the Master will conclude that their economic circumstances are also roughly equivalent. Moreover, Wife testified that she would be agreeable to an even division of the parties' assets and liabilities and the Master will therefore divide the assets and liabilities evenly.

*Id.* at 19. The Divorce Master did not mention any student loans in the report and recommendation, and Husband did not file exceptions.

On November 12, 2019, the trial court entered a divorce decree adopting the Divorce Master's Report and Recommendation. The divorce decree stated that "the distribution of the marital assets and liabilities shall be 50% to each party." Divorce Decree, 11/12/19, at 1. It also provided that the parties "be responsible for their own debts and obligations" and "indemnify

---

[2] The Divorce Master noted Wife was represented by counsel, while Husband was not "represented … nor has he participated in any of the proceedings." *Id.* The Divorce Master delayed the hearing for 20 minutes "to permit Husband additional time to appear," but when Husband "failed to appear or to communicate with the [c]ourt[,] testimony commenced." *Id.*

and hold harmless the other party for any liability the other may incur as a result of the first party's failure or refusal to pay his or her debt." *Id.* at 3. Husband did not file an appeal from the divorce decree.

Nearly six years later, Husband filed a petition for contempt. Husband asserted that he learned "in 2024" about "student loans that were obtained by [Wife during the marriage], in 2014 and 2018, in [Husband's] name, for the parties' daughter, using [Husband's] social security number and date of birth without his consent." Petition for Contempt, 6/20/25, at ¶ 6. Husband averred that Wife did not list the student loans in the inventory she filed during the divorce proceedings. *Id.* at ¶ 7. He stated that in 2025, payments were "not being made," and the lenders were requiring him "to make the same." *Id.* at ¶ 8. Husband claimed his credit had been damaged due to Wife's failure to refinance or pay the student loans. *Id.* at ¶ 19. Consequently, Husband requested the trial court find Wife in contempt and order her to refinance or pay the student loans.

Wife filed a response and motion to dismiss the contempt petition. She averred that Husband waived his "right to object" to the student loans because he was seeking to address "an issue that he could have addressed at the time of the divorce hearing." Response and Motion to Dismiss, 8/8/25, at ¶ 24(d). Wife also denied Husband "was unaware that his personal information was being used to obtain the student loans." *Id.* at ¶ 10 (stating "the parties discussed this very issue concerning the student loans."); *id.* at ¶¶ 11-13, 17-18, 21 (same). Wife stated that "it was understood by their daughter that it

was her responsibility to pay them after she graduated." ***Id.*** at ¶ 14. However, Wife also averred that since "the debt is in [Husband's] name, it is his obligation to pay." ***Id.*** at ¶ 21.

The trial court held a hearing on September 17, 2025. Husband's counsel reiterated that Husband was asking the court hold Wife "in contempt of the Divorce Code and to have her be responsible to pay the loans she took in [Husband's] name." N.T., 9/17/25, at 5.

Husband testified first.[3] He explained that in 2014, while his daughter was finishing high school, he "made the point, if you're going to go to college, you have to have skin in the game and pay for your things and I'll help you afterwards with those things if [I can]." ***Id.*** at 21-22. Husband stated that approximately four years later, when his daughter was enrolled in college and "at the time of the divorce," he was aware of "a Sallie Mae loan that I am a

_____

[3] Husband testified that he did not participate in the prior divorce proceedings because he was out of the country for work. He stated:

> I tried making them and they were not scheduled at times when I was in the country. I was working. I work out of the country. I travel for my job. And there was a list of dates I could make it and those dates were not looked at as being options to show up for court. [Wife's] lawyers had made dates I could not make and I have emails stating I could not make that happen and the following court date was when I was not here in the country. It wasn't I didn't want to go to court, it was I wasn't here to go to court.

***Id.*** at 20.

cosigner with my daughter and she makes the payment every month, and that's the … only agreement I thought I ever had." *Id.* at 13.

Husband testified that he first learned he was listed as the borrower on other student loans in November 2023, when he "was notified by [Wife] by email." *Id.* at 8. Husband denied "receiving any communications or email alerts regarding these loans prior to receiving the email from [Wife]." *Id.* at 10. He said that he subsequently "reached out" to Wife "to make this right." *Id.* at 12. He relayed that Wife "felt I was the person who was supposed to pay, that is what her position was and I was supposed to make that happen; and that was not part of what I thought would be right. I never agreed to that." *Id.* at 13. Husband added:

> I spent almost a year-and-a-half working with [the lender] trying to resolve this issue [as] a fraud case against me and I had to file a police report, had to do research with them to figure stuff out. And it comes right down to no signature of my name is anywhere on any of the documents with [the lender] stating that I took loans out. Only thing there is my social security number.

*Id.* at 14. Husband described his credit being "tremendously" impacted by the nonpayment of the loans. *Id.* at 15. He stated that "one year prior to 2024 I had a credit score of 720 and now I'm down to a 565 because of this." *Id.* at 16.

On cross-examination, Husband confirmed he was "made aware on June 12th of 2018" that he had "some obligation" for his daughter's student loans. *Id.* at 18. He repeated that he thought he was a cosigner, and "never had the loans in my name a hundred percent." *Id.* Husband also confirmed that

he received the Divorce Master's Report and Recommendation and did not file exceptions. *Id.* at 21, 32.

The parties' daughter testified next. Like Husband, she stated her understanding that Husband "would be the cosigner" of her loans, but she "was the one who was responsible." *Id.* at 36. She also stated that she became aware that Husband was the borrower who was responsible for the loans "within the last year to year-and-a-half." *Id.* According to the parties' daughter, Wife completed the loan applications, but later told her "it was me and my dad's responsibility to figure it out." *Id.* at 37. The parties' daughter testified that she was unable to repay the loans because her income was "not enough to cover what the payments would be monthly" and she "already pay[s] another loan." *Id.* at 40.

Wife testified last. She corroborated Husband's testimony that the parties "let [their daughter] know we were not able to pay for her tuition and pay for her to go to school, that she would need to take loans out and we would help her where we could." *Id.* at 44. Wife reiterated that "it was [her daughter's] responsibility to pay for the loans." *Id.* at 47. However, Wife also testified that she completed all of the loan applications. *Id.* at 58. When her counsel asked about the loans being in Husband's name, Wife stated:

> I explained to [Husband] that I could get the loans but the interest rate would be about 2 points higher because of my debt-to-income ratio. His was better because none of [our] debt was in his name. Everything was in my name. So she could save 2 percentage points, point-and-a-half to 2 percentage points if she used his information for the Parent Plus loans.

Q. And he was fully aware of that?

A. He was definitely aware of that, yes.

*Id.* at 48.

Wife further testified that she "placed" a student loan in her name during her daughter's senior year in college because the parties "weren't together anymore." *Id.* at 50. She also stated that she paid off her daughter's "Sallie Mae and aidVantage loans." *Id.* at 49-50 (introducing documentation of Wife's satisfaction of the loans as Exhibit 3).

With respect to the divorce proceedings, Wife explained that she did not include the student loans in her inventory because "they weren't on my credit report" and "this was her responsibility." *Id.* at 51. Wife discussed her obligation to pay for various debts after the parties' divorce, and stated that "after about a year-and-a-half of trying to stay above water, I filed for bankruptcy." *Id.* at 53. Wife testified that none of the student loans were discharged in the bankruptcy proceeding. *Id.* at 62-63.

Finally, Wife confirmed that she contacted Husband in November 2023 about the outstanding loans. Wife stated:

> I just wanted to let him know that I was receiving emails from [the lender, which] was the Parent Plus loan bank, that the deferment was going to be lifted and the payments were going to be due in January or February. So I wanted to let him know that I was getting those and forwarding them to [our daughter, and] make sure she was communicating with her father.

*Id.* at 55. Wife explained that she encouraged the parties' daughter to pay the loans, but retained counsel after further text and email communications

with Husband. *Id.* at 56. Wife reiterated that she completed the loan applications, but had done so with Husband's knowledge. *Id.* at 59.

On October 28, 2025, the trial court entered a decision and order denying Husband's contempt petition as "untimely and without merit." Decision, 10/28/25, at 11. The court found that although Husband had requested relief in a contempt petition, he was "in fact requesting the [court] to re-open, amend, or otherwise set aside his obligations under the Divorce Decree." *Id.* at 7. The court concluded Husband's request was untimely and that he failed to establish the fraud required to open or vacate the divorce decree. *Id.* at 8 (citing 23 Pa.C.S. § 3332 (opening or vacating divorce decrees)). In particular, the court determined "Husband was fully aware of the student loans no later than November 2023[,] but did not file a petition with the [c]ourt until June 20, 2025." *Id.* at 10. The court explained:

> Given the totality of the circumstances, it appears both [the parties' daughter] and Wife, as well as Husband, were confused or unaware of the consequences of co-signing the student loans. The [c]ourt finds Husband lacks credibility in his assertion that he was entirely in the dark as to the student loans until November 2023. This view is in large part supported by Husband's own admission via email [to Wife] that "he was willing to let the [alleged fraudulent decisions made by Wife] go because [he] just didn't have the time or energy to deal with someone (your lawyer and yourself) who is being shitty to [him]." (Exhibit P-8). While it may be true that Wife acted independently of Husband's direct participation in securing [their daughter's] student loans, Husband's self-admitted delay in addressing the fraud he now wishes the [c]ourt to address bars him from recovery.

*Id.* at 11.

- 8 -

On November 25, 2025, Husband filed a timely notice of appeal, followed by a court-ordered concise statement of errors on December 22, 2025. Husband presents the following questions for review:

1. Whether the Lower Court erred in determining [Husband's] Petition for Contempt was actually a Petition to re-open, amend or otherwise set aside [his] obligations under the Divorce Decree.

2. Whether the Lower Court erred in failing to take into consideration the timing of the discovery of the extrinsic fraud committed by [Wife] in utilizing [Husband's] personal information, including his social security number, in obtaining student loans for the [p]arties[' daughter] in [Husband's] name which prevented [him] from timely raising the issue.

3. Whether the Lower Court erred in failing to determine the student loans [Wife] obtained in solely [Husband's] name for their [daughter] w[ere] debt that should have been disclosed by [Wife] on her Inventory.

4. Whether the Lower Court erred in determining [Husband] waived his right to file a Petition for Contempt because [he] failed to participate in the equitable distribution trial for the divorce, when [Husband] presented evidence that he was out of the Commonwealth at the time for his employment, and had asked for a continuance.

5. Whether the Lower Court erred in determining [Wife's] actions in securing student loans for the [p]arties[' daughter] in solely [Husband's] name, using his personal information, including his social security number, without his knowledge or consent was not extrinsic fraud.

Husband's Brief at 1-2.

*DISCUSSION*

At the outset, we note that Husband presents five questions, but fails to divide his argument "into as many parts as there are questions to be argued," and does not "distinctively" address "the particular point treated therein,

- 9 -

followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a); *see* Husband's Brief at 7-12. The crux of Husband's entire 5-page argument is that "extraordinary causes exist to permit the [trial c]ourt to compel [Wife] to have to indemnify and hold [Husband] harmless from the [s]tudent [l]oans." Husband's Brief at 12.

In contrast, Wife argues:

Husband had five (5) years from the date of the divorce decree (November 12, 2019) to vacate the divorce decree for extrinsic fraud pursuant to 23 Pa.C.S. § 33[3]2. Husband filed a contempt petition on June 20, 2025. Husband is time barred from proceeding with said petition.

Wife's Brief at 5. Our review reveals no basis for relief.

1. *Husband's contempt petition*

First, we agree with the trial court that Husband improperly petitioned for contempt. In divorce cases, contempt proceedings are used to compel compliance with an equitable distribution order, and a party must have violated an order to be found in contempt. *See Rhoades v. Pryce*, 874 A.2d 148, 155 (Pa. Super. 2005) (*en banc*); *Garr v. Peters*, 773 A.2d 183, 189 (Pa. Super. 2001). Husband did not seek relief based on Wife's violation of a court order. Rather, he claimed Wife "deliberately hid the existence" of the student loans. Petition for Contempt at ¶ 14. According to Husband, Wife "acted willfully, vexatiously and in violation of Pennsylvania law, when using [Husband's] personal information to obtain the student loans without his consent[,] and for failing to disclose the same during the divorce proceedings,

- 10 -

thereby making [Husband] liable for debt he did not know existed." *Id.* at ¶ 17. As the trial court observed, Husband's contempt petition "was an inappropriate vehicle to compel Wife to remedy financial repercussions Husband suffered as a result of loans which are not explicitly addressed in the parties' divorce decree." TCO at 2-3. We agree that the evidence cannot "sustain a finding of contempt." *Id.* at 12.

2. *Waiver*

Next, we agree with Wife's contention that Husband waived his right to challenge his responsibility for the student loans because he did not participate in the equitable distribution proceedings. *See* Wife's Brief at 15-18. Wife emphasizes that "Husband could have filed timely exceptions to the Divorce Master's Report and Recommendation and failed to do so." *Id.* at 17.

Under the Domestic Relations Code, a party has 20 days to file exceptions to "any part" of a report and recommendation. Pa.R.C.P. 1920.55-2(b). Matters "not covered by exceptions are deemed waived unless, prior to entry of the final decree, leave is granted to file exceptions raising those matters." *Id.* This Court has held that "failure to file exceptions to the [m]aster's report precludes appellate review." *McArdle v. McArdle*, 679 A.2d 1316, 1317 (Pa. Super. 1996). We have also stated:

> Our Supreme Court has frequently stressed the necessity of raising claims at the earliest opportunity, *i.e.,* during the trial or hearing, so that alleged errors can be corrected promptly, thus eliminating the possibility that an appellate court will be required to expend time and energy reviewing claims on which no trial ruling has been made.

*Mazlo v. Kaufman*, 793 A.2d 968, 969 (Pa. Super. 2002) (citations omitted).

In *Mazlo*, this Court found the appellant had not preserved his claim because "not only did [he] not object at the hearing, he did not even attend the hearing." *Id.* Thus, we declined to "allow [the a]ppellant to benefit by his disregard of appropriate procedure and long-standing principles of waiver." *Id.* at 970. Consistent with *Mazlo*, we decline to support Husband's disregard of appropriate procedure, and find that he waived his right to challenge his responsibility for the student loans.

3. *Vacating or opening the divorce decree*

In the absence of waiver, we would discern no abuse of discretion in the trial court's denial of relief. The court determined that the relief Husband requested would require the court "to evaluate and otherwise re-open or amend the divorce decree," and that Section 3332 of the Divorce Code was "the only means to enforce the relief sought by Husband." TCO at 2, 13.

Section 3332 states:

A motion to open a decree of divorce or annulment may be made only within the [30-day] period limited by 42 Pa.C.S. § 5505 (relating to modification of orders) and not thereafter. The motion may lie where it is alleged that the decree was procured by intrinsic fraud or that there is new evidence relating to the cause of action which will sustain the attack upon its validity. A motion to vacate a decree or strike a judgment alleged to be void because of extrinsic fraud, lack of jurisdiction over the subject matter or a fatal defect apparent upon the face of the record must be made within five years after entry of the final decree. Intrinsic fraud relates to a matter adjudicated by the judgment, including perjury and false testimony, whereas extrinsic fraud relates to matters collateral to the judgment which have the consequence of precluding a fair hearing or presentation of one side of the case.

23 Pa.C.S. § 3332.

A divorce decree "is presumptively valid and is a conclusive adjudication of everything involved therein except the jurisdictional facts on which it is founded." *Keating v. Keating*, 855 A.2d 80, 84 (Pa. Super. 2004) (citation omitted). Accordingly, the purpose of Section 3332 is "to codify the extraordinary circumstances which will outweigh the interests of the parties and the court in finality, and to delimit the time periods which within such circumstances must be established." *Bardine v. Bardine*, 194 A.3d 150, 153 (Pa. Super. 2018) (citation omitted).

> Importantly, the concern is no longer about economic fairness. "[A] general plea to economic justice will not satisfy the stringent standard set forth [in Section 3332]." *Melton v. Melton*, 831 A.2d 646, 651 (Pa. Super. 2003) (citing *Justice v. Justice*, 417 Pa. Super. 581, 612 A.2d 1354, 1357 (1992)). This "stringent standard" involves clear evidentiary requirements and time constraints on a court's authority to open or vacate a divorce decree[.]

*Mariano v. Rhodes*, 270 A.3d 521, 525 (Pa. Super. 2022).

With these principles in mind, we review an order denying a petition to open or vacate a divorce decree for an abuse of discretion. *Maldonado v. Maldonado*, 340 A.3d 1049, 1052 (Pa. Super. 2025). Here, the trial court did not abuse its discretion. The court observed that Husband failed to seek relief within 30 days of the entry of the divorce decree, and "after missing the deadline" under 42 Pa.C.S. § 5505, he "likewise failed" to seek relief "within the five years" set forth in 23 Pa.C.S. § 3332. TCO at 14-15. The trial court noted that Husband failed to demonstrate diligence "in assessing the student

loans as part of equitable distribution." *Id.* at 12. The court stated that "based on the testimony," it "was unwilling to define Wife's actions in assisting [the parties' daughter] with securing student loans as 'extrinsic fraud,'" where "it appeared both [the daughter] and Wife, as well as Husband, were confused or unaware of the consequences of [obtaining] the student loans." *Id.* at 15. Notably, the court "found Husband lack[ed] credibility in his assertion that he was entirely in the dark as to the student loans until November 2023." *Id.* It was within the trial court's province to weigh the evidence and decide credibility, and we will not reverse the court's determinations when they are supported by the evidence. *Carney v. Carney*, 167 A.3d 127, 131 (Pa. Super. 2017).

*CONCLUSION*

The trial court appropriately considered Husband's petition for contempt as a petition to open or vacate the divorce decree, and properly determined that his claims were waived, untimely, and without merit. In summary, the court did not abuse its discretion in denying Husband's request for relief regarding outstanding student loans taken on behalf of the parties' daughter.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/24/2026